UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIZHELL I. ELENA, an individual,<br><br>                                       Plaintiff,<br><br>v.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY, an Illinois corporation; MATRIX ABSENCE MANAGEMENT, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>                                       Defendants. | Case No.: 21-cv-0390-GPC-MDD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 8]** |

Before the Court is a Motion to Dismiss ("MTD") filed by Defendants. ECF No. 8. The MTD primarily argues that Plaintiff's allegation of intentional infliction of emotional distress ("IIED") is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, commonly referred to as "ERISA." The MTD also argues that if not preempted by ERISA, the IIED claim is time-barred by the statute of limitations. Upon considering the moving papers and the case record, the Court **DENIES** the MTD.

# BACKGROUND

The First Amended Complaint ("FAC") alleges that Plaintiff Jizhell I. Elena ("Ms. Elena") had been an employee of L-Brands d/b/a Victoria's Secret since 2008, in which she paid into a long-term disability insurance provided by Defendant Reliance Standard Life Insurance Company ("Reliance Standard"). FAC ¶ 9, ECF No. 5. But around June 2018, she had to quit her job due to her medical condition, eventually being diagnosed with systemic lupus. *See id.* at 4.

Ms. Elena submitted her paperwork to apply for Reliance Standard's disability coverage. *See id.* ¶ 15. Defendant Matrix Absence Management, Inc. ("Matrix"), Reliance Standard's third-party claim administrator, contacted Ms. Elena on June 20, 2018. *See id.* ¶¶ 8, 16. Matrix's letter to Ms. Elena informed her that her claim had been received and was being investigated. *See id.* ¶ 16.

But according to the FAC, what followed was a Kafkaesque ordeal. *See generally id.* at 5–13. To summarize, even after Ms. Elena and her treating physician repeatedly provided the documents that Matrix asked for, Matrix denied Ms. Elena's disability claims in September 2018, citing "Failure to provide medical documentation." By then, Ms. Elena became homeless, for she had no job and had little financial means due to her medical treatment expenses. At one point, she was sexually assaulted at a homeless shelter.

At the center of this three-month claims handling process is the claims administration agent designated by Matrix, referred in the FAC as "Agent." *See id.* ¶ 8. Most relevant to this lawsuit, allegedly the Agent "repeatedly mocked, taunted, degraded harassed, ignored and insulted" Ms. Elena when she reached out about her insurance denial. *See generally id.* at 9–10. He "mocked Plaintiff's contention that she was homeless and in need of help," asking Ms. Elena what trolley she was riding, or telling her that he could not hear because it was "Too loud in whichever one of those places you

are calling from today." He mocked Ms. Elena's "thick accent," told her he "needed to get a translator," and asked if she needed words "spoken to her in Mexican" (Ms. Elena speaks English fluently). When Ms. Elena told the Agent she could not obtain help, the Agent responded, "Do you mean to tell me that you have no family? You have no mom? No Dad? . . . You have no family walking this earth? How does that happen?" And when Ms. Elena told the Agent she was feeling suicidal, he responded: "Oh well you are so disabled, how would you even be able to pull that off?"

Eventually Ms. Elena secured counsel, and once counsel reached out to Matrix, Matrix approved her claim without asking for any new medical evidence or paperwork. *See id.* at 11–13. According to Ms. Elena, she now seeks weekly help from a mental health professional regarding her post-traumatic stress disorder ("PTSD"). The PTSD pertains to her being homeless, which was "exacerbated" by the ridicule she suffered from the Agent. This is on top of her daily battle against systemic lupus. *See id.* at 13.

The original Complaint, filed in state court on January 25, 2021, alleged three Causes of Action: (1) breach of implied obligation of good faith and fair dealing, and bad faith failure to issue payment; (2) bad faith failure to properly investigate a claim; and (3) breach of contract. *See* ECF No. 1-2. Defendants removed the case and moved to dismiss the Complaint, arguing that ERISA preempts the entire Complaint. *See* Notice of Removal, ECF No. 1; MTD, ECF No. 3. On March 22, 2021, Ms. Elena filed the FAC, which replaced the three Causes of Action with one IIED claim. *See* ECF No. 5. Subsequently, the Court issued an Order denying the first MTD as moot. ECF No. 6. And on April 5, 2021, Defendants filed the operative MTD. ECF No. 8. Ms. Elena filed an Opposition, and Defendants filed a Reply. ECF Nos. 10, 12.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") tests the sufficiency of a complaint, *Navarro v. Block*, 250

3

21-cv-0390-GPC-MDD

F.3d 729, 732 (9th Cir. 2001), and dismissal is warranted if the complaint lacks a cognizable legal theory, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a Rule 12(b)(6) motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The court assumes the truth of all factual allegations and construes all inferences from them in the light most favorable to the non-moving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## **DISCUSSION**

The Court declines to dismiss Ms. Elena's FAC at this stage of the lawsuit. Her IIED claims are not preempted by ERISA because they do not depend on or derive from her ERISA benefit claims in any meaningful way. What the Agent said to Ms. Elena is actionable regardless of whether the disability benefits were granted or not. Because Ms. Elena's IIED claims are independent from ERISA, she can seek punitive damages as well. Finally, construing the allegations most favorable to Plaintiff, the IIED claim is within the 2-year statute of limitations, as the original Complaint was filed on January 25, 2021 and the FAC relates back to the original Complaint.

### I. ERISA Preemption

ERISA provides a "uniform regulatory regime over employee benefit plans." *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Accordingly, "any state-law

cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

Specific to Defendants' MTD, ERISA preempts "any and all State laws" if the state laws "relate to" any "employee benefit plan" as defined in the ERISA statutes (commonly referred to as an "ERISA plan"). *See* 29 U.S.C. § 1144(a). Here, whether there was an ERISA plan is not at issue. The parties agree that the disability benefits plan in the case in front of this Court constitutes an ERISA plan under the relevant law. *See* Pl.'s Opp'n 7, ECF No. 10 ("Plaintiff does not oppose the contention that an ERISA plan exists . . . .").

Rather, the operative question in this lawsuit is whether the state IIED law "relates to" the ERISA plan. "[A] state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474, 479 (2020) (alteration in original) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)). As the Ninth Circuit recently discussed:

> A state law impermissibly "refers to" ERISA "if it 'acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation.'" A state law has an impermissible "connection with" ERISA if it "governs a central matter of plan administration or interferes with nationally uniform plan administration," such as "by requiring payment of specific benefits or by binding plan administrators to specific rules for determining beneficiary status."

*Howard Jarvis Taxpayers Ass'n v. California Secure Choice Ret. Sav. Program*, No. 20-15591, -- F.3d --, 2021 WL 1805758, at *11 (9th Cir. May 6, 2021) (quoting *Rutledge*, 141 S. Ct. at 480–81).

As shown from what courts consider as "referring to" or being "in connection with" ERISA, the focus is on "the objectives of the ERISA statute," and "the nature of

5

the effect of the state law on ERISA plans," so that the state law does not function as "alternative enforcement mechanisms" for ERISA. *See Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 980–81 (9th Cir. 2001) (citations omitted); *see also Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665–67 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 223, 205 L. Ed. 2d 127 (2019).

Defendants construe the above standard as a "but for" test, *see* MTD 16, ECF No. 8, by citing to *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (citation omitted) (assessing the "referring to" or "connection with" prongs based on whether "'the existence of [an ERISA] plan is a critical factor in establishing liability' under a state cause of action"). But that is not exactly the law. To start, no part of the *Wise* opinion even adopts the word "but for." Instead, *Wise* preempted plaintiff's state law claims of fraud, misrepresentation, and negligence because to prevail on these claims, plaintiff had to demonstrate that he suffered the "loss of insurance benefits." *See id.* at 1191. To the extent that this approach was a "but for" analysis, it is only because once the issue of insurance benefits was out of the question, no state law claim survived. This is in tune with the courts' concerns about "dressing up an ERISA benefits claim in the garb of a state law tort." *Dishman*, 269 F.3d at 983; *see also Filler v. Blue Cross of California*, 593 F. App'x 685, 686 (9th Cir. 2015) (citing *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1110–11 (9th Cir. 2011)).

Indeed, the Ninth Circuit rejected a blanket "but for" approach. In *Dishman*, defendant asserted that plaintiff's state law tort claims "related to" the plan "because but for the plan's relationship of insurer and insured, [defendant] would have had no need to investigate [plaintiff's] claim of disability." 269 F.3d at 983. The Ninth Circuit responded that defendant's argument "smacks of the 'uncritical literalism' the Supreme Court has admonished [the court] to eschew." *Id.* at 984. The Ninth Circuit reasoned that under defendant's "but for" approach, ERISA administrators would suddenly

become immune from garden variety torts because the tort happened "in the course" of the plan's administration. And such could not be Congress's intent when it legislated ERISA. *See id.* at 983–84.

To the extent that courts conduct a "but for" analysis, it is to assess if the state law claims would disappear had defendant granted the ERISA benefits. *See id.* at 983 ("But for the denial of the [plaintiff's] claim, there would have been no grounds for their state law actions. If [defendant] had authorized the requested treatment, there would have been no loss of consortium, no breach of contract, and presumably no emotional distress.").

And applying the Ninth Circuit's approach in assessing whether a state law claim "relates to" an ERISA plan, Ms. Elena's IIED cause of action is not preempted. Whether Matrix ultimately granted the disability benefit does not affect the emotional injury inflicted on Ms. Elena, because the FAC is taking issue with the Agent's beratement and harassment to her. *See, e.g.*, ECF No. 5 at ¶ 33. Numerous district court cases have also concluded that ERISA does not preempt state IIED claims when the complaint concerns the ERISA administrator's conduct. *See, e.g.*, *Kresich v. Metro. Life Ins. Co.*, No. 15-CV-05801-MEJ, 2016 WL 1298970, at *4 to *7 (N.D. Cal. Apr. 4, 2016) (collecting cases).

To be clear, the beratement/harassment Ms. Elena alleges is not the denial of benefits itself, but the Agent's actual words to Plaintiff. This distinction is what separates the facts of this lawsuit from *Johnson v. Lucent Techs. Inc.*, 669 F. App'x 406 (9th Cir. 2016), a case that rejected plaintiff's IIED claim. *See id.* at 408 ("The gravamen of [plaintiff's] IIED claim is that [defendant's] 'cessation of benefits constituted an intentional infliction of emotional distress.' . . . Indeed, but for [defendant's] termination of his benefits, there would have been no grounds for [plaintiff's] state law action."). Thus, Defendants' reliance on *Johnson* does not persuade the Court.

It is uncontested that Ms. Elena suffered through the Agent's harassments only because an ERISA plan existed in the first place. But that does not permit ERISA to preempt "garden variety torts." *See Dishman*, 269 F.3d at 984. Ms. Elena is alleging that, regardless of her receiving/denying disability benefits, the Agent's words were tortious. Since these allegations do not "relate to" ERISA plans as interpreted by the case law, ERISA does not preempt the FAC.

## II. Punitive Damages

Having decided that ERISA does not preempt Ms. Elena's IIED claims, the Court also rejects Defendants' request to dismiss and/or strike the FAC's request for punitive damages. The entire basis for Defendants' request is that ERISA does not permit punitive damages. *See* MTD 18–20, ECF No. 8. Since Plaintiff's IIED claim is not an ERISA claim, nor can ERISA capture the FAC under preemption, the plea for punitive damages survives.

## III. Statute of Limitations

Finally, Ms. Elena's IIED allegation is not time-barred by the statute of limitations. The FAC makes clear that the alleged conduct occurred after Ms. Elena became homeless in September 2018, *see* ECF No. 5 at ¶ 33 ("Defendants' Agent repeatedly mocked Plaintiff's contention that she was homeless . . . ."), and before she obtained counsel in April 2019, *see id.* at ¶ 39 ("On April 2, 2019, Plaintiff met with counsel regarding her situation."). Under the inference most favorable to Plaintiff, the Agent's conduct is well within the 2-year statute of limitations for IIED claims since Ms. Elena filed her original Complaint on January 25, 2021. *See* ECF No. 1-2. Indeed, Plaintiff represents to the Court that she can—and will—establish via discovery that the problematic conduct by the Agent occurred after January 25, 2019. *See* Pl.'s Opp'n 20, ECF No. 10.

The fact that the IIED claim was only raised on March 22, 2021, *see* FAC, ECF No. 5, does not convince the Court to conclude otherwise. Even if the operative date is

8

21-cv-0390-GPC-MDD

March 22, it is still within the statute of limitations under the motion to dismiss legal standard. *See id.* (discussing that the communications occurred "up until Plaintiff retained counsel in April of 2019").

More importantly, the appropriate filing date for the Court to consider is January 25, 2021. An amended pleading "relates back" to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Such is the case if the claims "share a common core of operative facts such that the plaintiff will rely on the same evidence to prove each claim," the focus being "to ensure that the original pleading provided adequate notice of the claims raised in the amended pleading." *Echlin v. PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018) (citing *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)). A review of the two Complaints makes it clear that Ms. Elena will be relying on the same evidence to establish her case—specifically, the denial of her disability benefits and the subsequent communications she had with Matrix. Indeed, Defendants were adequately noticed of their conduct when the original Complaint also referenced the harrowing words Ms. Elena had to hear at those phone calls. *See* Compl. ¶ 33, ECF No. 1-2 (alleging how Ms. Elena was told that she was being "Too loud," "too aggressive," "she was not speaking clearly and that a translator was going to be needed due to her 'accent'").

## **CONCLUSION**

For the reasons above, the Court **DENIES** Defendants' Motion to Dismiss. The Court also **VACATES** the hearing on the matter, originally scheduled for May 28, 2021.

**IT IS SO ORDERED.**

Dated: May 24, 2021

Hon. Gonzalo P. Curiel
United States District Judge

9