1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 JIZHELL ELENA, an individual, | Case No.: 21-cv-00390-GPC |
| 12                              Plaintiff, | **ORDER DENYING IN PART AND** |
| 13 v. | **GRANTING IN PART** |
| 14 RELIANCE STANDARD LIFE | **DEFENDANTS' MOTION FOR** |
| INSURANCE COMPANY, an Illinois | **SUMMARY JUDGMENT** |
| 15 corporation doing business in the state of | |
| California; MATRIX ABSENCE | **[ECF No. 22]** |
| 16 MANAGEMENT, INC., a Delaware | |
| 17 corporation doing business in the state of | |
| 18 California; and DOES 1-50, inclusive, | |
| 19                              Defendants. | |

20

21        Defendants Reliance Standard Life Insurance Company ("Reliance") and Matrix

22 Absence Management ("Matrix") (collectively, "Defendants") filed a Motion for

23 Summary Judgment on Plaintiff Jizhell Elena's ("Elena" or "Plaintiff") claim for

24 intentional infliction of emotional distress, seeking dismissal of Plaintiff's entire First

25 Amended Complaint. ECF No. 22. Upon consideration of the moving papers and the case

26

27

28

1  record, the Court HEREBY DENIES IN PART AND GRANTS IN PART Defendants'

2  Motion for Summary Judgment.

3  **I.   BACKGROUND**

4      This case arose against the backdrop of a long-term disability insurance claim.

5  Plaintiff was employed with Limited Brands (or "L Brands"), the parent company of

6  Victoria's Secret, for about ten years, beginning in 2008. Elena Depo. 47:10-47:19 (ECF

7  No. 31-1 at 20). Around June 2018, she began experiencing severe symptoms including

8  an inability to stand, swelling in her lower extremities, swelling in her hands, and

9  uncontrollable bloody bowel movements. *Id.* 48:22; 51:1-51:4. She began treatment with

10 Dr. Anselmo Roldan in June 2018 and was diagnosed with systemic lupus, arthropathy

11 (joint disease), and chronic pain. *Id.* 48:22-48:23; ECF No. 31-1 at 43 (Ex. 2 to Plaintiff's

12 Notice of Lodgment of Exhibits ("NOL"), Health Care Provider Medical Certification).

13 Plaintiff's severe illness and attendant diagnosis meant that she was no longer able to

14 work. ECF No. 31-1 at 50. Plaintiff was entitled to long term disability coverage through

15 a group policy that Reliance issued to Plaintiff's employer, L Brands. ECF No. 31-2 at 2

16 (Plaintiff's Response to Defendants' Undisputed Material Facts No. 1 ("Plaintiff's UF")).

17 Plaintiff submitted a claim to Reliance, which was handled by Matrix, and which was

18 received on June 19, 2018. Elena Depo. 50:19-50:21; Plaintiff's UF at 2. Senior Claims

19 Examiner Allen Wittig ("Wittig") was assigned to Plaintiff's claim and began working on

20 it on June 20, 2018. Plaintiff's UF at 2.

21     What follows is a timeline of criss-crossing exchanges in which Plaintiff and her

22 providers state that they timely provided all requested documents, and Defendants claim

23 that Plaintiff and her providers repeatedly failed to provide these documents. At the

24 beginning of the claims process, Matrix requested that Plaintiff's doctor complete

25 paperwork describing her diagnosis and inability to work, which Dr. Roldan completed

26 and which was faxed to Matrix on June 28, 2018. ECF No. 31-1 at 43-45 (Ex. 2 to

27

28

Plaintiff's NOL). On June 31, 2018, Plaintiff also completed a medical release authorizing Matrix to contact her healthcare providers directly to obtain her records. *Id.* at 48 (Ex. 3 to Plaintiff's NOL).

Wittig first attempted to contact Plaintiff by phone on July 9, 2018 and July 11, 2018. ECF No. 23 at 2 (Lorenzo Decl. ¶ 6). On July 12, 2018, Plaintiff and Wittig spoke on the phone for the first time. *Id.* ¶ 7. On July 19, 2018, Plaintiff completed and faxed a second copy of the medical release she had completed on June 31, 2018. ECF No. 31-1 at 48 (Ex. 3 to Plaintiff's NOL). On the same day, July 19, 2018, Dr. Roldan sent Matrix a Medical Disability Certification Application for Disability Benefits describing Plaintiff as unable to walk or to use her hands and fingers. *Id.* at 52 (Ex. 4 to Plaintiff's NOL). The document's footer is stamped with "Matrix RCVD via FAX 07/19/2018." *Id.* On August 7, 2018, Dr. Roldan completed another Health Care Provider Certification, this time with specific Diagnosis codes, indicating again that Plaintiff was unable to work due to joint pain, edema, swelling, and major depression. *Id.* at 54 (Ex. 5 to Plaintiff's NOL).

On June 20, 2018 and July 24, 2018, Matrix issued letters to Plaintiff stating that information had been requested from Plaintiff and Dr. Roldan, and requesting Plaintiff's attention to the matter. ECF No. 26 at 20-23. On July 24, 2018 and August 22, 2018, Matrix contacted Dr. Roldan and requested fax copies of Plaintiff's medical records. *Id.* at 32-34. On August 22, 2018, Matrix issued a letter stating that it had not received medical records from either Plaintiff or Dr. Roldan documenting her disability. ECF No. 27 at 24. The letter warned that if the information was not received by September 17, 2018, Plaintiff's claim would be closed. *Id.* at 25.

On August 26, 2018, Plaintiff emailed Wittig to express confusion and frustration over the repeated assertions that Matrix had not received her medical records. ECF No. 31-1 at 58 (Ex. 6 to Plaintiff's NOL). In the email, Plaintiff stated: "Alan, I just revived [sic] a final notice from you to gain access to my medical records i [sic] faxed over from

my drs office the paper work you requested last month I'm confused as to why you haven't gained access yet? . . . I have no idea how people do this. Please reach out to me and be very specific in what you need from me next." *Id.* Wittig did not reply, nor was the email logged in Plaintiff's claim file. *See* ECF No. 26 at 10-11 (showing no entry of email between entries on August 22, 2018 and September 18, 2018). On September 18, 2018, Matrix sent a letter to Plaintiff informing her that her disability benefits claim had been denied for failure to provide medical records. ECF No. 31-1 at 60 (Ex. 7 to Plaintiff's NOL).

As 2019 began, Plaintiff's savings became depleted, and though she initially tried to stay with friends, she eventually became homeless. *Id.* at 10 (Ex. 1 to Plaintiff's NOL). She slept on the beach in Seaport Village, San Diego during the spring of 2019. *Id.* at 13. At that time, she had a government-issued phone that was provided to the homeless, which she could use to make calls for a fee. *Id.* at 15. Plaintiff does not recall the phone number assigned to this cellphone, but states that she used this phone to call Wittig in March and that the number did not begin with a 619 or 858 area code. *Id.* at 16. She also used pay phones, including one at the Bayer Boulevard trolley station and a pay phone outside a shelter by "12th and Imperial." *Id.* at 16; 27. Plaintiff does not believe that her personal cellphone, with a phone number ending in 0221, was working at the time. *Id.* Instead, she states that she relied primarily on pay phones. During this time, Plaintiff and Wittig continued to communicate regarding Plaintiff's claim.

The calls between Plaintiff and Wittig/Matrix regarding Plaintiff's disability file form the crux of Plaintiff's intentional infliction of emotional distress claim. Defendants assert that Plaintiff and Wittig spoke only three times: on July 12, 2018, October 2, 2018, and then not again until March 19, 2019. ECF No. 22-3 at 5 (Ex. A to Petermann Decl.). Plaintiff claims that she and Wittig spoke by phone around 25-30 times. ECF No. 28-1 at 12 (Elena Depo.). Plaintiff states that Wittig's comments were "dismissive from the

beginning" but that in early 2019, the comments became more distressing and abusive. ECF No. 31-1 at 17 (Ex. 1 to Plaintiff's NOL). According to Plaintiff, Wittig commented that he couldn't hear her because the trolley was too loud, which Plaintiff then explained was because she had to use a pay phone. *Id.* at 17. Plaintiff also states that Wittig said, "So you have no one you can stay with? You don't have a mom or a dad? You came from air?" *Id.* at 18. Plaintiff also called the Suicide Hotline (or "the Suicide Help Line") as a result of a conversation with Wittig in February 2019. *Id.* at 11. After Plaintiff mentioned to Wittig in March of 2019 that she had called the Suicide Help Line, he reportedly asked how she would "go about that [committing suicide] if she were disabled." *Id.* at 12. Plaintiff then told him she was going to "walk off Coronado Bridge, and put his name on my body somewhere with his phone number so people would know what he was doing." *Id.* During that same conversation, Wittig reportedly got irritated and said he could not understand Plaintiff because "her Mexican [accent] was too thick." *Id.* at 12-13. Plaintiff then tried to ask for a supervisor but was told that Wittig was a senior advisor, "so that's as high as it goes." *Id.* at 14. She then tried calling the HR department at Limited Brands, her former employer, to try and resolve the situation, but never received a call back from anyone at Matrix. *Id.* After that, Plaintiff began looking for a lawyer. *Id.* at 15.

Defendants state that around March 20, 2019, they finally received Plaintiff's medical paperwork, and that Wittig forwarded the records for internal medical review and evaluation. ECF No. 23 at 4 (Lorenzo Decl.). On April 3, 2019, Plaintiff's claim was internally approved at Matrix. ECF No. 27 at 14. On April 4, 2019, Plaintiff's newly retained counsel, Attorney Matt Blum, contacted Wittig by email for the first time, notifying Wittig that Plaintiff was now represented and that all future correspondence should be sent directly to Blum. ECF No. 26 at 15. Wittig responded on April 5, 2019, asking for a letter of representation. *Id.* On April 10, 2019, Matrix approved Plaintiff's disability claim and notified her via letter. ECF No. 26 at 30-31. On the same day, Wittig

emailed Plaintiff's attorney, Blum, notifying him of the approval. *Id.* at 19. Plaintiff contends that Blum's appearance on the scene was what prompted the approval, and that no new medical documents had been received—thereby showing that Wittig could actually have approved Plaintiff's claim much earlier but chose not to. ECF No. 5 at 12-13. Defendants counter that the approval was set in motion before Blum contacted Matrix and Wittig, and therefore that the approval was unrelated to the fact that Plaintiff had retained counsel. *See* ECF No. 22-2 at 6 (Defendant's UF No. 17).

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden of establishing the absence of any genuine issues of material fact falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322-23. The moving party's evidence "must leave no room for conflicting inferences as to material facts." *KOVR-TV, Inc. v. Superior Ct.*, 31 Cal.App.4th 1023, 1028 (1995).

Once the moving party has satisfied its initial burden, the non-moving party cannot rest on the mere allegations or denials of its pleading. The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-moving party may meet this requirement by presenting evidence from which a reasonable jury could find in its favor, viewing the

record as a whole, in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221-22 (9th Cir. 1995). In assessing whether the non-moving party has raised a genuine issue, "its evidence is to be believed, and all justifiable inferences are to be drawn in its favor." *Anderson*, 477 U.S. at 255. In other words, the court must 'view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). At summary judgment, the role of the court is not to weigh the evidence or determine the truth of the matter, but only to determine whether there is a genuine issue for trial. *Barefield v. Bd. of Trustees of CA State Univ., Bakersfield*, 500 F.Supp.2d 1244, 1267 (E.D. Cal. 2007) (citing *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1196 (9th Cir. 2001)). In other words, "[t]here is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

### A.   Intentional Infliction of Emotional Distress Claim

#### 1.   Legal Standard

Plaintiff's First Amended Complaint, which is the operative complaint in this action, pleads one cause of action: intentional infliction of emotional distress ("IIED") based on Wittig's actions and comments toward Plaintiff. ECF No. 5. at 13. An employer defendant is vicariously liable for the torts of its employees under the doctrine of *respondeat superior* when those torts are committed in the scope of their employment. *Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010). Because Wittig was employed by Defendants at the time of the alleged intentional infliction of emotional distress and committed the alleged wrongs in the scope of his duties as a claims administrator,

1   vicarious liability may attach to Defendants. *See Lisa M. v. Henry Mayo Newhall Mem.*

2   *Hosp.*, 12 Cal.4th 291, 297 (1995) (stating California's *respondeat superior* rule and

3   establishing that vicarious liability results where there was a causal nexus between the

4   tort committed and the employee's work).

5          "Under California law, to make out a cause of action for intentional infliction of

6   emotional distress, a plaintiff must show, in relevant part, that the defendant engaged in

7   extreme and outrageous conduct that exceeded the bounds of what is generally tolerated

8   in civilized society." *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1158

9   (9th Cir. 2000). "A cause of action for intentional infliction of emotional distress exists

10  where there is (1) extreme and outrageous conduct by the defendant with the intention of

11  causing, or reckless disregard of the probability of causing, emotional distress; (2) the

12  plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate

13  causation of the emotional distress by the defendant's outrageous conduct." *Hughes v.*

14  *Pair*, 46 Cal.4th 1035, 1050 (2009). A defendant's conduct is outrageous when it is "so

15  extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

16  The defendant's conduct must also be intended to inflict injury or engaged in with the

17  realization that the injury will result. *Id.* Liability for intentional infliction of emotional

18  distress does not lie where "mere insults, indignities, threats, annoyances, petty

19  oppressions, or other trivialities" make up the complained-of behavior. *Id.* at 1051 (citing

20  Rest.2d Torts § 46, com. d). Summary judgment is not appropriate where the facts are

21  sufficient to raise a triable issue of fact as to whether Defendants' conduct was so

22  "extreme and outrageous" as to permit recovery. *Barefield,* 500 F. Supp. 2d at 1276.

### 2.      Whether Summary Judgment is Appropriate

24         Defendants contend that Plaintiff's factual allegations underlying her IIED claim

25  (i.e. the calls between Plaintiff and Wittig where Wittig made the alleged distressing

26  statements) "are refuted by the evidence and did not happen." ECF No. 22-1 at 13. For

8

1   the purposes of summary judgment, Defendants also argue that even assuming Plaintiff's
2   allegations are supported, the facts presented in the case are insufficient to establish a
3   prima facie case of intentional infliction of emotional distress. *Id.* at 14. Defendants assert
4   that Wittig's comments were not sufficiently outrageous to satisfy the IIED standard, that
5   Plaintiff has not shown that she suffered severe emotional distress sufficient to maintain
6   her IIED claim, that Plaintiff has not shown that Wittig intended to cause emotional
7   distress because he was also making efforts to advance her claim during the relevant time
8   period, and that there is no actual or proximate causation present.

9       As stated above, since Plaintiff bears the burden of proving a prima facie case of
10  intentional infliction of emotional distress, Defendants can seek summary judgment by
11  pointing out the absence of evidence to support Plaintiff's claim. *Dove v. PNS Stores,*
12  *Inc.*, 928 F. Supp. 1420, 1425 (C.D. Cal. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S.
13  317, 323 (1986)). Plaintiff must then set forth specific facts showing that there is a
14  genuine issue for trial. *Id.*

15      First, there remains a triable material issue of fact as to whether Wittig's conduct in
16  making the alleged offensive statements was outrageous. Although the standard for
17  outrageous conduct is high, *see Yurick v. Superior Ct.*, 209 Cal.App.3d 1116, 1129
18  (1989), "the standard for judging outrageous conduct does not provide a 'bright line'
19  rigidly separating that which is actionable from that which is not." *Id.* at 1128. "Behavior
20  may be considered outrageous if a defendant (1) abuses a relationship or position which
21  gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible
22  to injuries through mental distress; or (3) acts intentionally or unreasonably with the
23  recognition that the acts are likely to result in illness through mental distress." *Hailey v.*
24  *Cal. Physicians' Servs.*, 158 Cal.App.4th 452 (2007). Plaintiff's deposition testimony
25  provides an evidentiary basis on which a trier of fact could reasonably find that Wittig's
26  comments were sufficiently outrageous to meet the IIED standard, especially taking into

27
28

1    account Plaintiff's homelessness, illness, and her position relative to Wittig and Matrix as

2    her claim administrators and the arbiters of whether she would receive a sum on which

3    she could live. The Court provides verbatim excerpts of Plaintiff's relevant deposition

4    testimony:

5        Q: Did those calls [to the Suicide Hotline] come before or after the February 2019

6        call?

7        A: I had some before. I let Allen know that our conversations were giving me

8        suicidal thoughts, and I just remember the last one was in March of 2019. My

9        sister's birthday is March 1st. And I was speaking to him. I was hungry. I was cold

10       . . . and I told him about the Suicide Help Line, and he said, "How would I go

11       about that if I was disabled?" I told him I was going to walk off Coronado Bridge,

12       and put his name on my body somewhere with his phone number so people would

         know what he was doing.

13       Q: [Counsel] How soon in your dealings with Mr. Wittig did he make comments

14       which you found offensive?

15
16       A: [Plaintiff] Hindsight is 20/20. So, I think he was dismissive from the beginning.

17       The comments started with the holiday season, I would call it, the cold season.

         Started saying things like, "It's too loud where you're at now. Are you on a

18       trolley? It's too loud. I can't hear you." He said he couldn't understand me. There

19       was too much noise. And I would state to him that I was homeless. "I'm out on the

20       streets. I'm using a pay phone. There's only so far this goes," the string, you know,

         from the phone. And he would scoff, just—"kuhhh."

21       . . . .

22       A: He also said at some point, "So you have no one you can stay with? You don't

23       have a mom or a dad? You came from air?"

24       . . . .

25       Q: Go ahead.

26       A: If I was telling him I had to go from one end to the other end of the city, to take

27       a bus and do this, and then he would say, "Oh, well, you are so disabled. How

28

1
2
3
4

would you—how are you going to pull that off?" Or if I was letting him know that I had to call the Suicide Help Line again, he would say, "How would you pull that off? You said your hands don't work," or "You said your legs were hurting and that you couldn't walk." That was his response to me letting him know.

5

ECF No. 31-1 at 17-19 (Elena Depo. 27:9-45:19).

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Plaintiff's deposition establishes evidence that abusive comments were made and that Defendants were aware of Plaintiff's homeless, ill, and vulnerable status. Defendant's evidence does not demonstrate otherwise, since Wittig stated in deposition testimony that he did not remember Plaintiff's claim and therefore could not testify whether he did not make the comments—only that he would not make them to a hypothetical claimant. ECF No. 28-2 at 19-21 (Wittig Depo. 136:6-138:16). As Plaintiff's disability benefits provider, Defendants were in a position of power over Plaintiff that heightens the context in which such behavior could be considered extreme or outrageous. *See Hailey*, 158 Cal.App.4th at 475 (discussing cases in which insurance adjusters could be found liable for IIED where they had knowledge of claimants' vulnerable mental condition). A trier of fact could also find that the alleged comments were made with a reckless disregard to the probability of causing emotional distress sufficient to satisfy the IIED standard. "[I]t is not essential to liability that a trier of fact find a malicious or evil purpose. It is enough that defendant 'devoted little or no thought' to the probable consequences of his conduct." *KOVR-TV, Inc. v. Superior Court*, 31 Cal.App.4th 1023, 1031-32 (1995). A reasonable trier of fact could conclude that such comments, especially comments dismissive of Plaintiff's suicidal tendencies while Wittig knew that Plaintiff was homeless and ill, would be outrageous beyond the bounds of what a civilized society might condone and were made without thought to the consequences.[1]

25
26
27

------

[1] The Court notes that Defendants' arguments to the contrary, *see* ECF No. 22-1 at 19, are unconvincing. Defendants insist that "[i]t defies comprehension to attempt to claim that Mr. Wittig was

28

Defendants also seek to negate this element of Plaintiff's claim by pointing out a lack of evidence supporting it—namely, by providing evidence showing that there were only three calls made between Plaintiff and Wittig, rather than the 25-30 calls that Plaintiff remembers. ECF 22-1 at 5-6. As an initial matter, Plaintiff's claim does not necessarily turn on the number of calls, but rather whether the alleged comments were made and what their effect on Plaintiff was. Whether there were three calls or 25-30 calls is a matter that bears on Plaintiff's credibility, but does not automatically negate Plaintiff's claims that Wittig made offensive and distressing comments to her. And at this juncture, it is not this Court's function to evaluate credibility. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). In addition, Plaintiff states in her declaration that she used a government-issued phone, with a number that did not begin with 619 or 858, to place calls to Wittig during the relevant time frame. ECF No. 3-14 at 2 (Elena Decl.). Defendants searched their records only for numbers beginning in 619 or 858, and therefore Defendants' evidence would not show records of calls from this government cell phone if its number did not begin in 619 or 858. ECF No. 22-3 at 2 (Petermann Decl.). Viewing the evidence in the light most favorable to the nonmoving party, the Court finds that Plaintiff has raised a triable issue as to whether Wittig made these abusive statements to her on the phone—whether it was during one

---

seeking to harm and inflict severe emotional distress on plaintiff through offensive comments, while at the same time recognizing that Mr. Wittig was actively taking steps to advance her claim, and then approving her claim." *Id.* The mere fact that Wittig might have been professionally competent in advancing a claim does not necessarily preclude the idea that he might intentionally or thoughtlessly inflict harm on a claimant during interpersonal interactions. Such actions are not mutually exclusive. And though Defendants may be more right than not that, in general, such a course of action would be confusing to an outside observer, such a common-sense theory, without evidence, is not the standard Defendants must meet as the moving party in a summary judgment motion.

call or twenty. Furthermore, Defendants do not dispute that there was a call in March 2019 between Wittig and Plaintiff, and Defendants' evidence shows that this call lasted for 17 minutes. ECF No. 22-3 at 7 (Ex. B to Petermann Decl.) (showing a call between Wittig and Plaintiff's phone number lasting 1,040 seconds). Plaintiff testified in her deposition that some of the most egregious alleged comments, including taunts about her suicidal tendencies, happened during a call in March 2019. ECF No. 31-1 at 13 (Elena Depo. 28:7-28:12). Thus, a reasonable trier of fact could find that the comments were made, and that they were sufficiently outrageous. *See KOVR-TV,* 31 Cal.App.4th 1023, 1030 (1995) (finding summary judgment was precluded, and conduct was indeed outrageous and extreme, where a jury could conclude that the facts reveal an "alarming absence of sensitivity and civility").

Plaintiff also alleges that "Defendants' Agent repeatedly lied to Plaintiff about the status of her disability application and corresponding medical paperwork. Defendants' Agent repeatedly falsely told Plaintiff that her medical paperwork had not been received." ECF No. 5 at 11 (FAC). Defendants describe this allegation as the second core of Plaintiff's IIED claim in their Motion for Summary Judgment and seek to rebut it by introducing notes from the claim file showing that the claim was forwarded for internal medical review and approved shortly after Defendants received a 46-page fax of Plaintiff's medical records from Dr. Roldan on March 19, 2019. ECF No. 23 at 4 (Lorenzo Decl. ¶ 16). These allegations form not an additional claim or a separately defined theory upon which to base the IIED claim but are inextricably intertwined with the course of conduct alleged by Plaintiff. Taking these allegations in the light most favorable to Plaintiff as the nonmoving party, these delays heighten not only the potential outrageousness of Wittig's conduct, but also provide a backdrop against which Plaintiff's distress, frustration, and despair are thrown into relief. Therefore, these allegations

21-cv-00390-GPC

1    provide further context for the genuine issues of material fact that remain to be resolved
2    at trial as to the element of outrageousness in Plaintiff's claim.

3         Second, Defendants argue that summary judgment is proper because Plaintiff has
4    not shown severe emotional distress sufficient to maintain her IIED claim. Generally, a
5    plaintiff may not recover for intentional infliction of emotional distress unless the distress
6    suffered has been severe. *Hailey,* 158 Cal.App.4th 452, 476 (2007) (citing *Fletcher v.*
7    *Western Natl. Life Ins. Co.*, 10 Cal.App.3d 376 (1970)). "Severe emotional distress is
8    described as emotional distress of such substantial quantity or enduring quality that no
9    reasonable man in a civilized society should be expected to endure it." *Duste v. Chevron*
10   *Products Co.*, 738 F.Supp.2d 1027, 1040 (N.D. Cal. 2010); *see Hughes v. Pair*, 46
11   Cal.4th 1035, 1040 (2009); *compare with Saari v. Jongordon Corp.*, 5 Cal.App.4th 797
12   (1992) (finding severe emotional distress where party was a "nervous wreck," suffered
13   shock and an inability to function in life, and became depressed); *Kelly-Zurian v. Wohl*
14   *Shoe Co.*, 22 Cal.App.4th 397 (1994) (panic attacks, anxiety, depression, and PTSD
15   sufficient to support substantial and severe emotional distress). A plaintiff may recover
16   for emotional distress without needing to show a resultant physical disability. *Hailey*, 158
17   Cal.4th at 476 (citing *Fletcher*, 10 Cal.App.3d at 396). Such distress "may consist of
18   any highly unpleasant mental reaction such as fright, grief, shame, humiliation,
19   embarrassment, anger, chagrin, disappointment, or worry." *Id.* at 397.

20        Plaintiff testified in her deposition that the alleged comments from Wittig made her
21   suicidal and prompted her to call the Suicide Help Line. ECF No. 31-1 at 8-9 (Elena
22   Depo. 22:24-23-1). She explained that "[] I told him I was out in the elements in a ton of
23   pain, with depression, hungry. I'm begging . . . it's like I'm making it very clear. I am
24   begging. 'I'm out here. And I have no means for food or water.'" *Id.* at 37 (Elena Depo.
25   100:14-100:19). Plaintiff's evidence therefore establishes suicidal ideation and

1   depression to support her claim of severe emotional distress.[2] Plaintiff does not need to

2   offer evidence of medical treatment for severe emotional distress for this Court to find

3   that there remains a triable issue of fact as to whether Plaintiff's emotional distress was

4   severe enough to support an IIED claim. Nor is it dispositive, as Defendants argue, that

5   Plaintiff and her counsel did not specifically identify severe emotional distress in

6   response to an interrogatory about damages, where Plaintiff's counsel understood

7   "damages" to mean monetary damages. *See* ECF No. 22-1 at 18. Drawing all reasonable

8   inferences and viewing the evidence in the light most favorable to Plaintiff as the non-

9   moving party, the Court finds that Defendants have not shown that there are no

10  conflicting inferences to be drawn from the facts, such that summary judgment is proper.

11  Instead, there remains a genuine issue of material fact, to be determined by the factfinder,

12  as to whether Plaintiff suffered severe emotional distress sufficient to support her claim

13  for IIED.

14

15

16

17

18

19

20

---

21

22  [2] Defendants argue that the deposition of Mr. Joseph Akronowitz, Plaintiff's psychologist, indicates that she did not suffer emotional distress because she did not receive treatment for it from Mr. Akronowitz.

23  ECF No. 32 at 6. Defendants also argue that Mr. Akronowitz's deposition testimony about the timeframe in which he treated Plaintiff contradicts Plaintiff's deposition testimony about that same

24  timeframe. Neither of these arguments are enough to negate Plaintiff's showing of evidence of severe emotional distress, thereby justifying summary judgment. As noted above, a plaintiff need not show

25  medical treatment, let alone medical treatment from a particular practitioner, in order to show severe emotional distress. And as this Court has discussed with regard to the number of calls made between

26  Plaintiff and Wittig, such issues of credibility are not for the Court to decide at summary judgment.

27  Rather, the Court's only role here is to determine whether a triable issue of fact remains.

28

21-cv-00390-GPC

1
2
3
4
5
6
7
8
9
10

Finally, the Court finds that Defendants have not met their burden as the moving party as to actual or proximate causation. Defendants devote little briefing space to this element, arguing only that "there is no evidence that plaintiff experienced the requisite emotional distress, and therefore, there is no evidence that Defendants' conduct actually and proximally caused plaintiff's alleged emotional distress." *Id.* at 19. As discussed above, there remain genuine issues of material fact as to whether Defendants' conduct was outrageous and whether Plaintiff suffered the requisite severe emotional distress as a result. Plaintiff has provided evidence that her claimed emotional distress was a direct result of her conversations with Wittig. Therefore, Defendants have not met their burden as the moving party in negating this element of Plaintiff's claim.

11
12

In sum, the Court finds that genuine issues of triable material fact remain such that summary judgment for Defendants should be denied.

13

### B.    Punitive Damages

14
15
16
17
18
19
20
21
22
23
24
25
26

Defendants further argue that Plaintiff's claim for punitive damages should be dismissed because an employer is not responsible for punitive damages where the employer neither directed nor ratified the act in question. ECF No. 22-1 at 20. Cal. Civ. Code § 3294 governs the award of punitive damages: "An employer shall not be liable for damages . . . based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him . . . with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded . . ." Cal. Civ. Code § 3294(b). For a corporate employer to be found liable for punitive damages, the "advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." *Id.* The question then is whether Defendants ratified Wittig's conduct and whether Wittig was a "managing agent" for the purposes of punitive damages.

27
28

1     "Managing agents" are only those employees who "exercise substantial

2  independent authority and judgment in their corporate decisionmaking so that their

3  decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal.4th 563,

4  566-67 (1999). The scope of a corporate employee's decisionmaking authority and

5  discretion under this test is a question to be decided on a case-by-case basis. *Id.*

6     Defendants have provided evidence that Wittig was not in a supervisory or

7  managerial position. ECF No. 28-2 at 26 (Wittig Depo. 169:2-169:15). Wittig had also

8  not been placed on a performance improvement plan or reprimanded by a supervisor as to

9  the way he handled claims, from which the Court infers that Defendants were not on

10  notice as to any potentially tortious conduct that would indicate unfitness for the job. *Id.*

11  at 24-25 (Wittig Depo. 142:25-143:16). Plaintiff counters that Wittig was a managing

12  agent because he reportedly told Plaintiff that there was no one she could complain to

13  about him. ECF No. 31-1 at 14 (Elena Depo. 29:11-29:15) ("I ended up asking for a

14  supervisor, and he said he was a senior adviser, so that's as high as it goes."). Plaintiff

15  has not pointed to any evidence that Defendants were on notice as to Wittig's unfitness

16  for the job, or otherwise ratified his conduct after learning of it.[3]  Nor does Plaintiff's

17  deposition testimony create a triable issue of fact as to whether or not Wittig was a

18  "managing agent" for purposes of Cal. Civ. Code § 3294. Even if Wittig told Plaintiff he

19  was "as high as it goes" with regard to her individual claim, this does not indicate that

20  Wittig exercised the independent authority as to ultimately determine *corporate* policy on

21

22  _____

23  [3] Plaintiff argues, with regard to contentions surrounding Defendants' policy of recording claim
      adjudicants' calls, that "if this Court (or a jury) presume an inference unfavorable to Defendant under
24    Fed. Rule 37(e)(2)(A-B), then they could also conclude that the Defendant had knowledge of Wittig's
      calls, that they listened to the recordings and that they failed to take reasonable action to stop him." ECF
25    No. 31 at 28. This is not evidence that Defendants knew of and ratified Wittig's conduct, and such a line
      of reasoning is simply too attenuated to support Plaintiff's argument that Defendants should be held
26    vicariously liable for punitive damages.

27                                              17

28                                                                        21-cv-00390-GPC

a broader scale. The Court therefore finds that summary judgment for Defendants is proper as to the issue of punitive damages, as Plaintiff has failed to create an issue of triable material fact.

### C.   Discovery and Evidentiary Disputes

#### a.   Plaintiff's Contentions Surrounding Discovery Issues and Request for Sanctions

Plaintiff's Opposition to summary judgment raises a number of evidentiary disputes relating to discovery and requests sanctions. First, Plaintiff argues that Defendants had a policy of recording all calls during the time in which Plaintiff's claim was being adjudicated, and thus a failure to produce calls leads to the conclusion that Defendants deleted them. ECF No. 31 at 23. Defendants counter that only incoming, connected calls were automatically recorded per Matrix policy, and that outgoing calls were not recorded—and thus, none of the calls between Plaintiff's cell phone number and Wittig were recorded. ECF No. 32 at 9. Therefore, no recordings were deleted or destroyed because none were made in the first place.

Plaintiff further argues that a notice of representation letter from an attorney would have triggered a litigation hold on recorded content, according to Defendant's 30(b)(6) witness Craig Petermann. ECF No. 31 at 23.[4] Since Plaintiff's attorney reached out to Matrix on April 5, 2019, Plaintiff argues that a litigation hold should have been placed, therefore preserving any recordings and voicemails exchanged between Plaintiff and Wittig. *Id.* Defendant counters that there were no recorded conversations to "hold" and that neither Plaintiff nor her counsel took any action to trigger a litigation hold. ECF No. 32 at 10.

---

[4] Petermann's deposition testimony stated that if an attorney notified the company that they were representing a claimant, that would "likely" trigger a hold. ECF No. 31-1 at 120 (Petermann Depo. 68:20-68:23).

21-cv-00390-GPC

Finally, Plaintiff argues that Defendants failed to produce complete discovery responses prior to the scheduled deposition of Craig Petermann, Defendants' 30(b)(6) witness as to Matrix's call logs and recording system. ECF No. 31 at 10. Plaintiff also notes that Defendant produced a call-log based on a search run by Petermann after the close of discovery and after his deposition, which was never produced until it was appended in support of Defendants' motion for summary judgment. This prevented Plaintiff from being able to cross examine the witness as to its creation, foundation, or authenticity, and Plaintiff argues Defendants thus contravened Federal Rule of Civil Procedure ("Rule") 37(b).

Per Magistrate Judge Dembin's Scheduling Order, "[a]ll disputes concerning discovery shall be brought to the attention of the Magistrate Judge no later than thirty (30) days following the date upon which the event giving rise to the dispute occurred." ECF No. 20. Plaintiff's discovery grievances are therefore properly put before the Magistrate Judge, not before this Court in the context of a summary judgment motion.

Plaintiff's request for $37,000 in attorney's fees incurred in defending the motion for summary judgment is DENIED. Plaintiff's briefing and Attorney Blum's declaration provide little to no basis for this Court to determine whether sanctions are warranted. In addition, assuming that these sanctions are sought because of Defendants' alleged violation of Rule 37(c), that would be an issue properly brought before the Magistrate Judge on a motion, rather than in the context of summary judgment briefing, as discussed above. This Court will not award sanctions before the matter has been properly considered and adjudicated. *See* Local Civil Rule 83.1, Sanctions for Noncompliance with Rules.

21-cv-00390-GPC

### b. Defendants' Objections to Plaintiff's Summary Judgment Evidence

Before ordering summary judgment in a case, a district court must rule on evidentiary objections that are material to its ruling. *Norse v. City of Santa Cruz,* 629 F.3d 966, 973 (9th Cir. 2010). A court need not rule on evidentiary objections that are not material to its ruling. *Williams v. Cnty. of San Diego*, 523 F.Supp.3d 1183, 1194 (S.D. Cal. 2021).

### i.   Plaintiff's Declaration

Defendants raise a number of evidentiary objections in connection with Plaintiff's Opposition to summary judgment. First, Defendants object, *inter alia*, to Plaintiff's declaration testimony regarding the number of her government-issued phone. The declaration testimony states that "it was a rather unusual number in that it began with an area code that was not 619 or 858." ECF No. 31-4 at 2 (Elena Decl. ¶ 3). Defendants argue that this is inconsistent with Plaintiff's deposition testimony, in which she stated she did not remember the number. ECF No. 31-1 at 15 (Elena Depo. 30:25-31:1) (Q: "Do you recall what the number was on that phone? A: "No, I do not. I don't.") Defendants' evidentiary objection as to this testimony is OVERRULED. As an initial matter, the Court notes that it is possible for a deponent not to remember an exact phone number but to remember a characteristic of that number (i.e. its area code). More importantly, however, this evidentiary objection again goes to Plaintiff's credibility rather than the evidence's admissibility, and the Court does not evaluate the credibility of the nonmoving party at summary judgment.

Defendants also object to Plaintiff's testimony about her nausea during deposition, and to Paragraph 5 of the declaration, which authenticates Exhibits 2, 3, 4, and 5. Because the Court did not rely on these portions of the declaration in making its

21-cv-00390-GPC

determination as to summary judgment, the Court need not rule on these non-material evidentiary objections.

### ii.    Declarations of Ilene Perez and Lanissa Marie Balderas

Defendants object to the declarations of Ilene Perez and Lanissa Marie Balderas, former coworkers and friends of Plaintiff's, which are offered to bolster Plaintiff's contentions. The primary ground of objection is that each of these declarations is impermissible hearsay not made admissible by an exception, and that each constitutes impermissible character testimony. ECF No. 33 at 2-3. Plaintiff counters that the statements in these declarations are excluded under the hearsay rule under Federal Rule of Evidence 801(d)(1)(B), because they report prior consistent statements of Plaintiff spoken to Perez and Balderas, and could be offered at trial to rebut Defendants' charge that Plaintiff is fabricating her claim. ECF Ni, 34 at 3. Plaintiff also notes that these declarations are not being offered as character evidence, so any such objection is misplaced. *Id.* at 4.

The Court did not rely on either of these declarations at issue, and thus no evidentiary ruling is needed on these non-material evidentiary objections. However, the Court takes note that objections to the form in which evidence is presented at summary judgment are "particularly misguided" where they target the non-moving party's evidence. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Even evidence that is not presented in an admissible form at the summary judgment stage may be considered at that stage, as long as the evidence could potentially be presented in an admissible form at trial. *Id.* (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003)). In other words, "Rule 56(e) requires only that evidence *would* be admissible, not that it presently be admissible" when it comes to the nonmoving party's evidence. *Id.* Therefore, the Court is not necessarily convinced that, even if the

1    Court were to rule on the evidentiary objections that were not considered here, such

2    evidence would necessarily be excluded from consideration at this stage due to its form.

3                        **iii.        Declaration of Matthew Blum**

4            Defendants object to the declaration of Matthew Blum as an improper attempt to

5    seek Rule 37 sanctions in the context of a summary judgment motion. ECF No. 33 at 3.

6    Plaintiff argues that the issues raised in Attorney Blum's declaration are properly before

7    this Court at this stage because, among other arguments, any additional briefing would be

8    redundant and it is procedurally more clear to proceed before this Court rather than

9    before the Magistrate Judge. ECF No. 34 at 4-5. The Court need not rule on this

10   evidentiary objection because the Court did not rely on Blum's declaration and did not

11   award sanctions. However, the Court notes that it disagrees with Plaintiff that at the time

12   of filing, it was too late to raise discovery disputes before the Magistrate Judge and

13   therefore such arguments must come before this Court. As the Court stated above, the

14   Magistrate Judge's Order is clear that discovery disputes can be raised thirty days after

15   the *incident* giving rise to the dispute, not on a date pegged to the close of discovery or

16   other procedural deadlines.

17   **IV.    CONCLUSION**

18           In sum, the Court finds that Plaintiff has raised triable issues of genuine material

19   fact, on which a reasonable factfinder could find for Plaintiff, as to her intentional

20   infliction of emotional distress claim. Specifically, questions of material fact remain as to

21   the outrageousness of Defendants' conduct in making the alleged comments, and as to the

22   severity of Plaintiff's emotional distress. Therefore, the Court finds summary judgment

23   inappropriate as to Plaintiff's claim and summary judgment for Defendants is HEREBY

24   DENIED. However, the Court finds that summary judgment is appropriate as to the issue

25   of punitive damages because Plaintiff has not raised a material issue of fact as to whether

26   Wittig was Defendants' managing agent such that punitive damages might attach through

27

28

22

21-cv-00390-GPC

1    *respondeat superior*. Summary judgment is therefore HEREBY GRANTED for

2    Defendants as to the issue of punitive damages only. The Court OVERRULES

3    Defendants' evidentiary objection as to Plaintiff's declaration testimony and declines to

4    rule on all other evidentiary objections, as they are not material to the Court's summary

5    judgment ruling.

6          **IT IS SO ORDERED.**

7    Dated:  April 20, 2022

8    Hon. Gonzalo P. Curiel
United States District Judge

23